**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BARBARA TRYON,**

                              **Plaintiff,**

    vs.                                                        5:10-CV-537
                                                                          (MAD)

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                              **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

AMDURSKY, PELKY, FENNELL
& WALLEN, P.C.                       Gregory R. Gilbert, Esq.
26 East Oneida Street
Oswego, New York 13126
*Attorneys for Plaintiff*

Social Security Administration         Sixtina Fernandez, Esq.
Office of Regional Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
*Attorney for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**


**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Barbara Tryon, brings the above-captioned action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking a review of the Commissioner of Social Security's decision to deny her application for supplemental social security ("SSI") and disability insurance benefits ("DIB").

**II.   BACKGROUND**

On May 23, 2007, plaintiff protectively filed an application for SSI and DIB benefits. (Administrative Transcript at p.106-118).[1]  Plaintiff was 42 years old at the time of the application with no prior work history.  Plaintiff claims that she suffered from chronic back and leg pain and problems with her right arm and hand due to a motor vehicle accident in May 2003.  (T. 144). Plaintiff claimed to be disabled as of April 27, 2005.  On August 29, 2007, plaintiff's applications were denied and plaintiff requested a hearing by an ALJ which was held on September 29, 2009.  (T. 21).  On November 12, 2009, the ALJ issued a decision denying plaintiff's claim for benefits.  (T. 8-16).  The Appeals Council denied plaintiff's request for review on March 26, 2010, making the ALJ's decision the final determination of the Commissioner. (T. 1-4).  This action followed.

**III.   DISCUSSION**

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 6.

2

>
> conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date, April 27, 2005. (T. 10). At step two, the ALJ concluded that plaintiff suffered from degenerative disc disease of the lumbar spine which qualified as a "severe impairment" within the meaning of the Social Security Regulations (the "Regulations"). (T. 10). At the third step of the analysis, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 11). The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "perform the full range of light work" and specifically, "during an 8-hour workday, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 6 hours, and sit for a total of 6 hours". (T. 12). At step four, the ALJ concluded that plaintiff had no past relevant work. (T. 15). At step five, relying on the medical-

3

vocational guidelines ("the grids") set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (T. 15). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 16).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ erred in failing to find that plaintiff's neck and right arm complaints were "severe impairments"; (2) the ALJ failed to properly apply the treating physician rule; (3) the ALJ failed to acknowledge the report from the state agency examining physician, Dr. Shayevitz; (4) the ALJ ignored the applicable Regulations and improperly assessed plaintiff's credibility; and (5) the ALJ's RFC determination is not supported by substantial evidence. (Dkt. No. ).

**A.   Severity of Impairments**

Plaintiff argues that the ALJ erred when he determined that plaintiff's neck and right shoulder impairments were "non-severe". A "severe" impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520( c ), 416.920( c )). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); see also Social Security Ruling 85–28, 1985 WL 56856, at *3–4, Titles II and XVI: Medical Impairments That Are Not Severe (S.S.A.1985).

4

Plaintiff has the burden at step two in the sequential evaluation process to demonstrate the severity of her impairment. *See* 20 C.F.R. § 404.1520( c ). The severity analysis at step two may do no more than screen out *de minimis* claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995)). "Often when there are multiple impairments, and the ALJ finds that only some of the impairments, but not others, are severe, any error in the severity analysis is harmless because the ALJ continues with the with the sequential analysis, and does not deny plaintiff's application based on the second step alone." *Kemp v. Comm. of Soc. Sec.*, 2011 WL 3876526, at *8 (N.D.N.Y. 2011).

**1.     Medical Evidence Relating to Neck and Right Arm/Shoulder Impairments**

From March 2004 until August 2008, plaintiff received treatment from Syracuse Orthopedic Specialists for complaints of pain in her neck and right arm/shoulder. The record contains a total of twelve treatment notes from Dr. Richard Zogby for the relevant time period and impairments (three visits in 2004; three visits in 2005; one visit in 2006; three visits in 2007 and one visit in 2008). On March 4, 2004, plaintiff complained of right shoulder pain. On examination, Dr. Zogby found, "right shoulder reveals stiffness with pain, internal external rotation". (T. 288). Dr. Zogby noted, "she has really significant problems with her shoulder at this time". On April 2, 2004, plaintiff complained of shoulder pain and the objective examination revealed the same results. Dr. Zogby diagnosed plaintiff with pain in her shoulder and commented, "as far as the shoulder is concerned, I feel this could be something that could be treated by Dr. Cooke who has seen her in the past and I will refer her for that". (T. 284). The

5

record contains no evidence of any treatment with Dr. Cooke.  In April 2004, an MRI of plaintiff's right shoulder revealed tendinosis without evidence of a rotator cuff tear and some inflammation with slight impingement.[2] (T. 436, 439).  On September 14 2004, Dr. Zogby's objective evaluation contained the same notation, "right shoulder reveals stiffness with pain, internal external rotation". (T. 281).  In 2005, 2006 and 2007, plaintiff treated with Dr. Zogby for other impairments but made no complaints of neck or right arm/shoulder pain.  During that time, Dr. Zogby offered no diagnosis, treatment or opinion relating to those alleged impairments.  Indeed, plaintiff did not make any further complaints regarding her neck or right arm/shoulder until August 2008.  On August 5, 2008, Dr. Zogby noted that plaintiff reported pain into her right arm with weakness.  Dr. Zogby found pain present in her cervical region and limited range of motion in plaintiff's shoulder.  (T. 493-496).  On September 13, 2008, Dr. Zogby completed a Medical Assessment Form and opined that plaintiff could occasionally lift/carry up to 10 pounds. (T. 488).

On December 6, 2006, plaintiff was examined by Berton Shayevitz, M.D., at the request of the agency.  (T. 342).  Dr. Shayevitz noted that plaintiff's "principal problem is low back pain" but also noted that since her automobile accident, she suffered pain in her right arm and hand and pain in the right trapezius muscle over the right scapula.  Upon examination, the doctor noted that plaintiff was in "no acute distress", her gait and cervical rotation were normal.  Forward and lateral flexion of her neck was limited due to tightness and some stiffness. (T. 344).  Plaintiff's range of motion in her right shoulder was full except for forward elevation.  Dr. Shayevitz diagnosed plaintiff with degenerative disc disease in the low back and cervical radiculopathy down the right arm, "although somewhat lacking in physical findings in the right arm and in the

---

[2] The MRI report is not part of the record herein.

6

back". (T. 345). Dr. Shayevitz "strongly suspected" degenerative disease in the neck with radiculopathy. (T. 345). Dr. Shayevitz concluded that plaintiff was moderately and markedly limited in sitting, standing, walking, lifting, carrying, bending, pushing and pulling by her low back problem. Plaintiff was also moderately and markedly limited in the use of her right arm and shoulder in terms of lifting, pushing, pulling and carrying. Finally, plaintiff was moderately limited in motions of her neck and activities dependent on neck motions like driving and operating machinery. (T. 346).

In February 2007, plaintiff sought treatment at the New York Pain Center for complaints of pain in her right upper extremity.[3] (T. 356). Upon examination, Linda Ehrich, ANP, writing for Joseph Tiso, M.D., noted that plaintiff exhibited tenderness in her right trapezius. The doctor requested a cervical MRI.[4] On March 1, 2007, plaintiff returned to the Pain Center complaining of neck pain. Upon examination, plaintiff exhibited a normal station and gait, full range of motion in her neck and head and tenderness with flexion, extension and rotation. (T. 355).

   **2.   Analysis**

The ALJ found that plaintiff's degenerative disc disease in the lumbar spine was a severe impairment. Plaintiff's complaints of pain in her neck and right arm/shoulder and her treatment for said complaints, was sporadic. All objective medical testing evidence relating to her neck and right arm/shoulder was normal. Despite the absence of objective evidence, Dr. Zogby and Dr. Shayevitz opined that plaintiff's ability to do work related activities was impaired by pain in her neck and right arm/shoulder. However, even assuming that the ALJ erred when he failed to acknowledge these opinions and find that plaintiff's neck and right arm/shoulder complaints were

---

[3] Plaintiff previously sought treatment and received epidural injections at the Pain Center for lower back pain.

[4] There is no indication in the record that this testing was performed.

medically determinable impairments that limited her ability to do work, that omission does not constitute reversible error.  The ALJ's omission of these impairments at Step Two of the analysis amounts to no more than "harmless error" because the ALJ continued with the sequential analysis.  In the remaining steps, the ALJ discussed all of plaintiff's medical treatment and considered plaintiff's neck and right arm impairments in determining plaintiff's RFC.  Indeed, the ALJ concluded, "plaintiff can lift/carry twenty pounds occasionally and ten pounds frequently".  *See O'Grady v. Comm. of Soc. Sec.*, 2011 WL 3652432, at *4 (N.D.N.Y. 2011) (the Secretary continued with the analysis and considered the claimant's cervical condition in plaintiff's RFC).  As the ALJ proceeded with the analysis and included plaintiff's severe and non-severe impairments in the RFC determination, there is no basis to remand this matter based upon the ALJ's step two analysis.

**B.     Application of Treating Physician Rule and Evaluation of Opinion Evidence**

Plaintiff argues that the ALJ misapplied the treating physician rule when he failed to assign controlling weight to Dr. Zogby's opinions.  Plaintiff also claims that the ALJ failed to evaluate or consider the opinions of the state agency examining physician, Dr. Shayevitz.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78–79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993).  An ALJ may refuse to consider the treating physician's opinion controlling only if he is able to set forth good reason for doing so.  *Saxon v. Astrue*, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011).  The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir.2007) (an ALJ may reject such

an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999)).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643–44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). When a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

**1.     Medical Evidence**

As discussed, plaintiff had twelve visits with Dr. Zogby from March 2004 through August 2008.[5] During those visits, Dr. Zogby's objective examinations of plaintiff's lumbar spine and lower extremities were consistently normal. On nearly every occasion, Dr. Zogby found that plaintiff's station and gait were normal and straight leg raising was negative bilaterally. The range of motion in plaintiff's lower extremities was full and painless. Additionally, as previously noted, Dr. Zogby's objective findings with respect to plaintiff's neck and right arm/shoulder were minimal. In April 2004, Dr. Zogby noted that he reviewed MRI films of plaintiff's lumbar spine and while no report had been prepared, he opined that the films revealed a disk bulge/protrusion at L5-S1 with disk dessication.[6] (T. 285). Dr. Zogby diagnosed plaintiff with discogenic syndrome.[7] Dr. Zogby referred plaintiff to the New York Pain Center for treatment. On August 11, 2004, plaintiff underwent an evaluation at the Pain Center.[8] Upon examination, plaintiff exhibited a normal station and gait and normal range of motion. Due to insurance issues, treatment was deferred. In June 2006, a lumbar discogram revealed concordant pain at L5-S1 with a small anular tear and epidural spread of contrast and some "atypical" increase in her pain symptoms at L3-4 and L4-5.[9] The report of the discogram indicates "no focal disk herniation". On October 3, 2006, plaintiff presented at the Pain Center with complaints of low back pain. The

---

[5] The record also contains four office notes from January 2004 through March 2004. However, those visits were for complaints of pain unrelated to issues presented on this appeal. In addition, the record contains one office note from December 2009 but the record is incomplete.

[6] The MRI report is not part of the record herein.

[7] Discogenic Syndrome is derangement of an intervertebral disc. *Dorland's Illustrated Medical Dictionary,* 534 (31st Ed. 2007).

[8] The records indicate that the August 2004 visit was a "follow up". However, the record does not contain any evidence of prior treatment at the Pain Center.

[9] A discogram is a radiograph of an intervertebral disk. *Dorland's* at 553.

doctor noted that plaintiff's MRI of her lumbar spine was "normal". Upon examination, plaintiff exhibited a normal station and gait, pain upon flexion, extension and rotation and a full range of motion. Plaintiff was scheduled for a nerve block and advised to pursue physical therapy. In January 2007, without any further diagnostic films or additional objective findings, Dr. Zogby diagnosed plaintiff with a herniated disc with myelopathy.[10] (T. 508).

In September 2008, Dr. Zogby prepared a Medical Assessment Form regarding plaintiff's ability to do work-related activities. In addition to the restrictions involving carrying and lifting, as discussed above, Dr. Zogby opined that plaintiff could sit for two hours in an eight hour workday and stand/walk for one hour. Dr. Zogby noted that plaintiff's response to treatment and prognosis were "poor". (T. 490).

In 2004 and 2005, plaintiff treated with various physicians at St. Joseph's Hospital Health Center, Family Practice Center. (T.361). On February 18, 2005, plaintiff treated with Sherin Varkey, M.D. for low back pain. (T. 364). Dr. Varkey discussed plaintiff's prior MRI and noted that it revealed that plaintiff suffered from a disc bulge/protrusion at L5-S1 with dessication. Dr. Varkey diagnosed plaintiff with low back pain and noted, "I will find out about who will accept the patient for diskography and a cortisone shot . . . and also she wanted some Lortab, which I will write a prescription for chronic low back pain".[11] (T. 364). On April 22, 2005, plaintiff returned to Dr. Varkey complaining of increased back pain. (T. 365). Upon examination, plaintiff had mild tenderness in the lumbar region but her motor exam in both extremities was 5/5,

---

[10] Myelopathy is a functional disturbances or pathological change in the spinal cord, often referring to nonspecific lesions in contrast to the inflammatory lesions of myelitis. *Id.* at 1239.

[11] Lortab is a semisynthetic opioid analgesic derived from codeine but having more powerful sedative and analgesic effects. *Dorland's* at 890, 1090.

her sensory exam was normal and her reflex exam was 2+ bilaterally in both lower extremities. Dr. Varkey diagnosed plaintiff with discogenic syndrome and provided plaintiff with Lortab and Skelaxin.[12] (T. 365). On July 8, 2005, plaintiff inquired as to whether Dr. Varkey could increase her Lortab prescription. (T. 366). Upon examination, Dr. Varkey noted that plaintiff was, "generally in no apparent distress. Back shows low back pain and mild tenderness on palpation". (T. 366). On March 24, 2006, plaintiff treated with Amber Shaff, M.D. for a follow up for medications. Dr. Shaff noted that plaintiff was taking Lortab and complaining of constipation. (T. 373). Upon examination, Dr. Shaff found a full range of motion, strength at 5/5 in all extremities and no loss of sensation. Dr. Shaff diagnosed plaintiff with chronic back pain and noted that a 2004 MRI of plaintiff's lumbar spine showed "normal spine, no significant disk bulge, herniation or stenosis". Dr. Shaff refilled plaintiff's prescription for Lortab but noted, "I suspect that she may be abusing these pain medications. This is the first time I am seeing her, I discussed with the patient the potential for addiction". (T. 373). Dr. Shaff opined that plaintiff's complaints of constipation were secondary to the pain medication and prescribed a laxative. (T. 374).

### 2. Dr. Zogby

The ALJ assigned "little weight", to Dr. Zogby's assessment explaining:

> Little weight is given to the general opinions of Dr. Borio[13] and Dr. Zogby, concluding that she is "temporary totally disabled", as the determination of whether the claimant is disabled under the definition of the Social Security Act is an issue reserved exclusively to the Commissioner. Further, little weight is also given to Dr. Zogby's assessment form as it is inconsistent with his treatment notes which indicated that while the claimant appeared to be in mild discomfort, palpation of the lumbar area revealed only mild right paraspinal

---

[12] Skelaxin is a centrally acting skeletal muscle relaxant used in the treatment of painful musculoskeletal conditions. *Dorland's* at 1163, 1748.

[13] Dr. Joseph Borio was plaintiff's chiropractor. Plaintiff does not dispute the weight afforded to his opinions.

>  tenderness, her gait was normal, and the straight leg test was negative bilaterally.

Upon review of the record, the Court agrees with the ALJ's assessment of Dr. Zogby's opinions. Dr. Zogby's September 2008 opinions regarding plaintiff's limitations are not supported by substantial medical evidence. Plaintiff's physicians at St. Josephs Health Care Center continually noted that plaintiff was in no acute distress, her motor and strength examinations were normal, sensory exams were normal and her range of motion was full. In addition, Dr. Tiso's notes indicate that plaintiff's objective medical testing was normal. While the lumbar MRI report is not part of the record herein, the physicians at St. Joseph's Health Care Center and the physicians at the Pain Center, noted that the films were negative/normal.

Moreover, Dr. Zogby's own objective testing further belies his conclusions. Upon examination, Dr. Zogby consistently found that plaintiff exhibited negative straight leg raising, a normal gait and normal strength testing. Dr. Zogby also stated that plaintiff walked "with no apparent pain or difficulty" finding only that she appeared in "mild pain". The limitations as expressed by Dr. Zogby in his September 2008 examination are far more limiting than any restrictions discussed in his office records and do not coincide with his contemporaneous findings. Accordingly, the ALJ assigned the appropriate weight to these opinions. *See Wynn v. Astrue*, 617 F.Supp.2d 177, 184 (W.D.N.Y. 2009) (the significant limitations were not supported by objective assessments such as range of motion and strength tests). Although the Court is aware that deference should be accorded to Dr. Zogby's opinions pursuant to the treating physician rule, the ALJ articulated "good reasons" for failing to afford the opinions such weight. *See Bennett v. Astrue*, 2010 WL 3909530, at *6 (N.D.N.Y. 2010) (citation omitted). Accordingly, the matter will not be remanded for further consideration of this issue.

### 3.     Dr. Shayevitz

The treating physician rule does not apply to consulting doctors. *See Goldthrite v. Astrue*, 2008 WL 445770, at *10 (W.D.N.Y. 2008). However, where the ALJ fails to give controlling weight to opinions from plaintiff's treating sources, the Regulations require an ALJ to explain the weight given to the opinions of state agency medical consultants. *Stytzer v. Astrue*, 2010 WL 3907771, at *7 (N.D.N.Y. 2010).

Here, the ALJ was not required to assign controlling weight to Dr. Shayevitz's opinions as he was a consulting physician who examined the plaintiff on one occasion. However, because the ALJ declined to afford "controlling weight" to Dr. Zogby's opinion, the ALJ was required to explain the weight he afforded to other medical evidence. In this regard, the ALJ reasoned:

> I have given great weight to Dr. Putcha because of her specialty as an orthopedic surgeon, and her report is based on a review of the evidence in record.[14]  I also give some weight to Dr. Ganesh's consultative examination because of her programmatic expertise and because it is based on an examination of the claimant.[15]   (T. 15).

The ALJ failed to specifically assign weight to Dr. Shayevitz opinions. However, upon review of the entire decision, it is clear that the ALJ considered and relied upon Dr. Shayevitz's opinions. The ALJ referred to Dr. Shayevitz's examination in the context of discussing plaintiff's right shoulder complaints:

> Berton Shayevitz, M.D. noted that the examination was lacking in physical findings in the claimant's right arm. (T. 11).

The ALJ also cited to Dr. Shayevitz's findings in a discussion of plaintiff's daily activities:

---

[14] Dr. Putcha did not examine plaintiff but performed a review of the record for the agency. Plaintiff does not contest or dispute the weight afforded to her opinions.

[15] On July 26, 2007, Dr. Kalyani Ganesh performed an internal medicine consultative examination at the request of the agency. Plaintiff does not contest or dispute the weight afforded to her opinions.

14

> In terms of activities of daily living, the claimant reported being able to tend to her personal needs; and do light cleaning, laundry and shopping. Socially the claimant lives with her son and boyfriend, socializes with her friends, and uses Facebook as a form of communicating with her friends. With regards to concentration, persistence or pace, the claimant is able to read, write, watch television, and use the Internet without any difficulties. (T. 11).

Finally, the ALJ noted that Dr. Shayevitz's report is consistent with the finding that claimant was capable of performing light work. (T. 13).

Despite the fact that the ALJ failed to specifically assign weight to Dr. Shayevitz's opinion, the ALJ clearly considered the opinion and thus, the Court declines to remand this matter on that basis. *See Barringer v. Comm'r of Social Sec.*, 358 F.Supp.2d 67, 78 -79 (N.D.N.Y. 2005) (an ALJ's failure to cite specific evidence does not indicate that it was not considered).

**C.   Credibility**

Plaintiff claims that the ALJ should have considered her efforts to alleviate her pain in connection with plaintiff's credibility assessment. Specifically, plaintiff contends that her "longstanding attempts at pain relief" should enhance her credibility.

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence.  *See* SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record.  SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon*, 781 F.Supp.2d at 105 (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)).  The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).

In this case, the ALJ, citing to SSR 96-7p, found plaintiff "not credible" based upon the objective medical evidence and her activities of daily living. (T. 13).  Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility. The ALJ discussed plaintiff's daily activities noting that she was able to grocery shop, do household chores, use the Internet/Facebook, read, play Scrabble and help her son with his

16

homework. (T. 14). The ALJ also commented on plaintiff's pain, the duration of the pain, aggravating factors, plaintiff's medication and plaintiff's attempts to alleviate her pain:

> The claimant also reported having neck pain everyday. She indicated that any activity would exacerbate her pain. More specifically, she cannot sit for more than an hour, and can only walk for a couple of minutes. In addition, she is unable to walk too far due to shooting pain in her leg. Despite taking medication for her pain five times a day, she testified that she still has pain, and is chronically fatigued. The claimant is unable to drive or visit with friends and family. A side effect of her medication includes constipation, which has caused abdominal pain. She also pursued non-surgical treatments for her back pain, such as medication, injections, physical therapy and transforaminal block; yet, the claimant's symptoms still remain. (T. 12).

The ALJ found plaintiff less than credible because the objective medical testing, including MRI films and clinical findings do not support her testimony. To wit, in February 2004, plaintiff advised her doctors at St. Joseph's Health Care Center that her low back pain "is much improved" and that she "doesn't really have any complaints currently". (T. 360). Moreover, plaintiff discussed her activities of daily living with Dr. Shayevitz and Dr. Kalyani Ganesh. (T. 475). Plaintiff stated that she could cook, clean, do laundry and light chores (with the exception of vacuuming and sweeping). Plaintiff could care for her personal needs, watch television and read. She lived with her significant other, her two children and her two grandchildren. Plaintiff also stated that she liked to socialize with friends. (T. 343).

Plaintiff argues, without factual or legal support, that the ALJ should have found her credible based upon her persistent efforts to obtain relief from pain. Plaintiff refers to her frequent use of prescription medication and the gastrointestinal side effects; her chiropractor visits and the fact that she received six nerve blocks. Based upon the record, the ALJ properly assessed plaintiff's treatment and applied the Regulations. In October 2003, plaintiff received seven chiropractic treatments. (T. 228). There is no further evidence of any chiropractic

17

treatment. Plaintiff had four physical therapy treatments in 2005 and nine sessions in 2006. (T. 300). Plaintiff has not had any physical therapy since November 2006. With regard to nerve blocks, as with all of plaintiff's medical treatment, the time in between treatments was lengthy. In 2007, Dr. Shaff suspected the plaintiff was abusing Lortab and other pain medications. Plaintiff claims that she "persistently" sought to alleviate her pain, however the substantial medical evidence does not support such efforts sufficient to warrant an enhancement of her credibility.

"To the extent the ALJ's RFC findings rested on his determination of plaintiff's credibility, it was 'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology'". *Cohen v. Astrue*, 2011 WL 2565659, at *22 (S.D.N.Y. 2011) (citations omitted). Taken as a whole, the record supports the ALJ's determination that plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of pain and adequately specified the reasons for discrediting plaintiff's statements.

**D.    RFC**

Plaintiff claims that the ALJ's RFC determination that plaintiff could perform the full range of "light work" is not supported by substantial evidence.

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis'

> means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).

Here, the ALJ found that plaintiff had the RFC to perform a full range of light work. Plaintiff argues that the ALJ failed at Step Five of the sequential analysis based upon the same arguments asserted above.  The Court has determined that the ALJ assigned the appropriate weight the medical opinion evidence and properly assessed plaintiff's credibility.  Thus, the Court finds that the ALJ employed the correct legal standards and that substantial evidence supports the ALJ's RFC determination.

## IV.   CONCLUSION

**IT IS HEREBY,**

**ORDERED**, that the decision denying disability benefits be AFFIRMED; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been RESCINDED, as such, any

appeal taken from this Order will be to the Court of Appeals for the Second Circuit, and it is further

    **ORDERED** that the Clerk of Court enter judgment in this case.

    **IT IS SO ORDERED.**

Dated:  February 7, 2012
        Albany, New York

Mae A. D'Agostino
U.S. District Judge